UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| NEAL SALES,<br><br>    Plaintiff,<br><br>v.<br><br>KIM ADAMSON, *et al.*,<br><br>    Defendants. | Case No.: 3:17-cv-00186-RCJ-WGC<br><br>**Report & Recommendation of<br>United States Magistrate Judge**<br><br>Re: ECF No. 26 |

This Report and Recommendation is made to the Honorable Robert C. Jones, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is defendant Susan Baros' Motion for Summary Judgment. (ECF Nos. 26, 26-1 to 26-6, 28-1.) Plaintiff filed a response. (ECF No. 31.) Baros filed a reply. (ECF No. 32.)

After a thorough review, it is recommended that Baros' motion be denied.

## **I. BACKGROUND**

Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this action pursuant to 42 U.S.C. § 1983. (Compl., ECF No. 6.) The events giving rise to this action took place while Plaintiff was housed at Lovelock Correctional Center (LCC). (*Id.*) The court screened Plaintiff's complaint and determined he could proceed on an Eighth Amendment failure to protect claim against Baros. (ECF No. 5.)

Plaintiff alleges that beginning in December of 2015, he repeatedly notified Baros that a 6' 5" tall, 280 lbs. inmate known as "Pee Wee" was sexually stalking him by staring in his window, following him, showering at the same time, and even rubbing his crotch against Plaintiff's back

while he sat at tier tables. Plaintiff avers that Baros refused to move Plaintiff or Pee Wee to separate units, and called Plaintiff a "trouble maker" and "cry baby." (ECF No. 6 at 11.) In April of 2016, Plaintiff's pain medication prescription was increased, which caused him to sleep heavily during the day when cell doors were left open. (*Id.*) On May 9, 2016, Plaintiff's cellmate left without locking the door while Plaintiff slept. (*Id.*) Plaintiff was woken up at approximately 12:15 p.m., by Pee Wee, who was already sodomizing Plaintiff. (*Id.* at 12.) He attempted to escape, but the much larger Pee Wee threw Plaintiff into the steel bunk and concreate wall, injuring Plaintiff and knocking him unconscious. (*Id.*) At approximately 2:30 p.m., Plaintiff asserts that he regained consciousness and hobbled out of his cell to report the incident. He was subsequently taken to the operations center, and was given an orange jumpsuit in exchange for his clothes. (*Id.* at 12.) A written statement was taken, and he was taken to Reno for questioning by a Nevada Attorney General agent and was examined by a sexual assault nurse. (*Id.*)

Plaintiff's other claims were dismissed with leave to amend; however, Plaintiff did not file an amended complaint. (*See* ECF Nos. 5, 8.) Therefore, the action is proceeding only as to the failure to protect claim against Baros.

Baros moves for summary judgment, arguing that there is no evidence Plaintiff notified her that Pee Wee posed a serious threat to his safety so she was not deliberately indifferent. In addition, she argues that she is entitled to qualified immunity because she did not violate a clearly established constitutional right since she did not know of any risk to Plaintiff.

2

## II. LEGAL STANDARD

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted). In considering a motion for summary judgment, all reasonable inferences are drawn in favor of the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On the other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

In evaluating whether or not summary judgment is appropriate, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine dispute as to a material fact; and (3) considering the evidence in light of the appropriate standard of proof. *See Anderson*, 477 U.S. at 248-50. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id*. at 248.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'… In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the

moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party cannot establish an element essential to that party's case on which that party will have the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a genuine dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Id*. Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

At summary judgment, the court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine dispute of material fact for trial. *See Anderson*, 477 U.S. at 249. While the evidence of the nonmoving party is "to be believed, and all justifiable inferences are to be drawn in its favor," if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *Id*. at 249-50 (citations omitted).

### III. DISCUSSION

Under the Eighth Amendment, prison conditions should not "involve the wanton and unnecessary infliction of pain" or be "grossly disproportionate to the severity of the crime warranting imprisonment." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Although prison conditions may be, and often are, restrictive and harsh, prison officials "must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)(quoting *Hudson v. Palmer*, 486 U.S. 517, 526-27 (1984)).

"[P]rison officials have a duty...to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833 (citations and quotations omitted); *see also Cortez v. Skol*, 776 F.3d 1046, 1050 (9th Cir.2015) (citing *Farmer*, 511 U.S. at 833). "Having incarcerated 'persons [with] demonstrated proclivit[ies] for antisocial criminal, and often violent, conduct,' having stripped them of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course." *Farmer*, 511 U.S. at 833 (internal citations omitted). "Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'" *Id.* at 834 (citing *Rhodes*, 452 U.S. at 347).

To establish a violation of this duty, the prisoner must establish that prison officials were "deliberately indifferent" to serious threats to the inmate's safety. *Farmer*, 511 U.S. at 834; *see also Labatad v. Corrections Corp. of America*, 714F.3d 1155, 1160 (9th Cir. 2013) (citing *Gibson v. County of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002)).

When a plaintiff claims prison officials failed to take reasonable steps to protect, the plaintiff must show that "he is incarcerated under conditions posing a substantial risk of serious

harm." *Id.* (citations omitted). This is a question of fact, and "must be decided by the jury if there is any room for doubt." *Lemire v. Cal. Dept. of Corr. and Rehab.*, 726 F.3d 1062, 1075-76 (9th Cir. 2013) (citation omitted). "[T]o satisfy the objective prong, it is enough for the inmate to demonstrate that he was exposed to a substantial risk of some range of serious harms; the harm he actually suffered need not have been the most likely result among this range of outcomes." *Id.* at 1076 (citing *Gibson v. Cnty. of Washoe, Nev.*, 290 F.3d 1175, 1193 (9th Cir. 2002)).

Second, the inmate must satisfy a subjective element. This means that the prison official must "know of and disregard an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. "Liability may only follow if a prison official 'knows that inmates face a substantial risk of serious harm and disregard that risk by failing to take reasonable measures to abate it.'" *Labatad,* 714 F.3d at 1160 (quoting *Farmer,* 511 U.S. at 847).

Baros argues that there is no evidence that she knew that Pee Wee posed a risk to Plaintiff's safety. She provides a declaration that states that prior to the incident with Pee Wee on May 9, 2016, Plaintiff never advised her that Pee Wee was sexually stalking him, and never discussed with her any concerns regarding Pee Wee that posed a security threat to Plaintiff. (ECF No. 26-1.) To support her motion, she also provides case notes from 2013 to May of 2018; Plaintiff's grievance history report (which contains a summary of grievances filed); kites (inmate request forms) filed from December of 2015 to December of 2016; and, Plaintiff's I-file, which she contends contain no complaints made to Baros about Pee Wee in advance of the May 2016 assault. (ECF Nos. 26-2 (case notes); 26-3 (grievance history report); 26-4 (kites); 28-1 (I-file)).

1        Plaintiff directly contests Baros' statement that she did not have knowledge of the risk
2   posed to Plaintiff by Pee Wee. Plaintiff maintains that Baros was repeatedly informed and made
3   aware that Pee Wee was sexually stalking him. Specifically, he claims that prior to the sexual
4   assault incident, he went on numerous occasions into Baros' office (she was his caseworker) and
5   asked Baros to move him to another unit away from his stalker. Plaintiff claims that on several
6   different occasions, Baros asked Plaintiff not to do or write anything and that she would take care
7   of the problem off the record. Plaintiff claims Baros then did nothing to protect him. (Pl.'s Decl.,
8   ECF No. 31 at 5-6.)

9        There is an obvious dispute of material fact that necessitates denying Baros' motion for
10  summary judgment: whether Plaintiff advised Baros about Pee Wee's sexual stalking prior to the
11  May 9, 2016 incident. A fact finder believing Baros' version of events could conclude Baros did
12  not know of the stalking, and therefore, was not deliberately indifferent. On the other hand, a fact
13  finder believing Plaintiff's version of events could determine that Plaintiff told Baros of the sexual
14  stalking by Pee Wee and asked to be moved to another unit, and Baros did nothing in response.
15  The latter version of events supports a conclusion that Baros knew of and disregarded a serious
16  risk to Plaintiff's safety in violation of the Eighth Amendment.

17       Baros' qualified immunity argument hinges on a finding by the court that Baros did not
18  know of the sexual stalking. Since this material fact is disputed, the court cannot find Baros is
19  entitled to qualified immunity at this time.

20       In sum, Baros' motion for summary judgment should be denied.

21       Plaintiff also argues that this motion is premature as he should allowed to be conduct
22  discovery. He claims that video footage will show that Plaintiff going to Baros' office prior to the
23  assault. He asks the court to order Baros to turn over all video footage from February 10, 2016, to

May 25, 2016, that shows Baros' office and Plaintiff's cell. To the extent Plaintiff's argument can be interpreted as a request to deny the motion under Federal Rule of Civil Procedure 56(d), the request should be denied as moot in light of the court's finding that there is a disputed material fact. Plaintiff's request that the court order Baros to provide certain evidence should likewise be denied. The court will enter a scheduling order and Plaintiff may request the evidence in discovery.

## IV. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order **DENYING** Baros' motion for summary judgment (ECF No. 26). Plaintiff's request to deny the motion under Federal Rule of Civil procedure 56(d) should be **DENIED AS MOOT**. Plaintiff's request for the court to order Baros to turn over evidence should likewise be **DENIED**.

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: March 18, 2019.

_____
William G. Cobb
United States Magistrate Judge