# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

NEAL SALES,

    Plaintiff,

v.

KIM ADAMSON, *et al.*,

    Defendants.

Case No.: 3:17-cv-00186-RCJ-WGC

**ORDER**

Re: ECF Nos. 62, 70, 82, 119

    Before the court is Plaintiff's "Motion to Enact Rule 37(e)." (ECF No. 119.)

    Neal Sales (Plaintiff) is an inmate in the Nevada Department of Corrections (NDOC). Plaintiff filed a Civil Rights Complaint pursuant to 42 U.S.C. § 1983 (ECF No. 6) for an alleged sexual assault that occurred while Plaintiff was housed at Lovelock Correctional Center (LCC) on May 9, 2016. (*Id.* at 1.) Plaintiff is currently housed at Northern Nevada Correctional Center (NNCC). In its Screening Order (ECF No. 5), this court ordered Plaintiff's Eighth Amendment failure to protect claim may proceed against Defendant Susan Baros (Defendant) for failing to assign Plaintiff Sales to different housing after allegedly being advised by Plaintiff that a fellow inmate (referred to as "Pee Wee") was stalking or threatening Plaintiff. (*Id.* at 10.)

## I. BACKGROUND

    The court interprets Plaintiff's Motion to Enact Rule 37(e) as the latest iteration of Plaintiff's earlier Motion for Sanctions (ECF No. 70), Plaintiff's Motion for Spoliation of Evidence (ECF No. 82) and Plaintiff's Motion to Compel/Motion to Renew Motion to Compel (ECF Nos.

54, 62).[1] The court initially addressed Plaintiff's motions for sanctions/spoliation at its motions hearing on August 1, 2019. The issue presented by all of Plaintiff's motions, and the Defendant's responses, was whether Plaintiff's alleged "move kites," advising of purported threats from inmate Pee Wee and requesting a housing reassignment if any there were, were received by Defendant Baros, and if so, whether any were retained. The Defendant in an earlier motion for summary judgment (ECF No. 26) submitted what were purported to be all of Plaintiff's kites from the December 2015 through December 2016, which would have spanned the time period of Plaintiff's assault by fellow inmate "Pee Wee." Defendant Susan Baros in a declaration submitted with her motion for summary judgment (ECF No. 26) represented that "prior to the incident that occurred on May 9, 2016, [Baros] was never advised by Mr. Sales that Pee Wee was sexually stalking Mr. Sales" and that "Mr. Sales never discussed any concerns he had regarding Pee Wee posing a security threat to Mr. Sales with [Baros]." *Id.* at 26-1.

In response to Plaintiff's motion to compel (ECF Nos. 54, 62), Jeffrey Chandler, who is employed at LCC as a Case Worker, represented that kites by inmates to be reassigned to a different cell or housing unit are characterized as "move kites." (ECF No. 65-2 at 2.) Mr. Chandler stated that "these kites are not part of the permanent record of the inmate and are not, generally, included in an inmates institutional file." Mr. Chandler further represented that he "searched the case worker files at this unit at LCC and there are no request forms relating to the Plaintiff" and that any such documents, i.e., "move kites," "would not be ordinarily kept by case workers at LCC for more than a few months." (ECF No. 65-2 at 2.)

---

[1] Plaintiff's motion to compel/motion to renew motion to compel (ECF Nos. 54, 62) were denied by the court at the motions hearing on August 1, 2019. (ECF No. 87 at p. 3.)

On the other hand, Plaintiff has adamantly maintained that on several occasions prior to his being assaulted by Plaintiff on May 9, 2016, that he advised Ms. Baros of his concerns about Pee Wee stalking him, the possibility of his being assaulted by Pee Wee and a request he be assigned to a different housing unit away from Pee Wee. *See* Complaint, ECF No. 1-1 at 11; Motion to Compel, ECF No. 54/62; Motion for Sanctions (re spoliation of evidence), ECF No. 70; Motion Requesting Sanctions for Spoliation of Evidence, ECF No. 82, and now, Plaintiff's Motion to Enact 37(e). (ECF No. 119.) Plaintiff has submitted a statement of a fellow inmate who represented he is aware of the complaints Plaintiff made to Defendant Baros about his housing concerns. (ECF No. 70 at 9.)

At the court's motions hearing on August 1, 2019, the court questioned Defendant's counsel about a May 9, 2016 kite which was attached to Defendant's opposition to Plaintiff's motion for summary judgment. (ECF No. 80-1.) The court inquired why this particular kite, which could be interpreted as a "move kite," was retained by LCC while others, if any, were not. The court instructed Defendant's counsel to submit a further explanation of the retention policy on "move kites." (ECF No. 87 at 6.)

In response to the court's order, Defendant provided a declaration of LCC Associate Warden Tara Carpenter. (ECF No. 88-1.) In her declaration, Ms. Carpenter explains that the May 9, 2016 kite[2] was extracted from Plaintiff's incident file at LCC (i.e., the report of the Pee Wee assault) and not part of the inmate's institutional file. Ms. Carpenter further represented that there are no "move kites" in Plaintiff's I-file which predate the date of the incident, May 9, 2016.

---

[2] Erroneously referred to in her declaration as the kite of "May 9, 2019." (ECF No. 88-1, p. 7.)

She is not aware of any other written document that reflects Mr. Sales complained of any problem with Pee Wee. (ECF No. 88-1 at 2.)

When Defendant submitted her supplement to her response to Plaintiff's Motion for Summary Judgment, Ms. Baros noted that Plaintiff ". . . in his own words, admitted he never told the Defendant why he wanted to move to another unit." (ECF No. 88 at 21.) Defendant refers to Plaintiff's report of the incident ECF No. 80-1 at 1 wherein he stated, "the caseworker can't seem to move me out – I didn't want to tell her, I have to tell someone." While this statement could be interpreted as inferring he did not alert Ms. Baros to Pee Wee's threats, it could also be interpreted as suggesting the caseworker was previously requested to move Plaintiff from the unit where both he and Pee Wee were housed but was unable to do so (i.e., "can't seem to move me out").

With respect to Plaintiff's "Motion to Enact Rule 37(e)," Plaintiff's motion addresses alternative sanctions which the court may impose under Fed. R. Civ. P. 37(e) for failure to preserve "*electronically* stored information." (emphasis added.) Although Plaintiff claims he "put the 'Powers to Be' on notice that there will be litigation from the Defendant's failure to protect" (ECF No. 119 at 3), Plaintiff points to no electronic evidence which should have been preserved by either Baros (the sole defendant remaining in this action) or by the "Powers to Be." While the court recognizes Plaintiff's argument he claims to have submitted one or more "move kites" before he was assaulted, the court also recognizes that Defendant Baros contends no such kites were ever received by her, nor is there any indication such reports were recorded electronically but disposed of. Additionally, as noted above, Defendant's initial motion for summary judgment (ECF No. 26) submitted copies of Plaintiff's case notes which are devoid of any threats by Pee Wee, nor does Plaintiff's grievance history reflect any indication of any danger to Plaintiff Sales by Pee Wee (or

any other inmate) (ECF No. 26-2, Exh. C, case notes); ECF No. 26-3, Exh. D. Grievance History; ECF No. 26-4, Exh. E., kites, 12/2015- 12/2016; and ECF No. 26-6, Walsh Declaration.)

Plaintiff submits an October 3, 2019 memorandum from Associate Warden Lisa Walsh to NNCC inmates regarding the requirement that inmate request forms are to be submitted in triplicate. (ECF No. 119 at 4.) The court fails to discern, however, how an October 2019 policy for NNCC inmates has any bearing on how "move kites" at LCC were submitted or maintained in 2015-2016.

The bottom line of these disputes is that (1) Plaintiff's claims he orally and in writing advised Defendant Baros of threats Pee Wee presented and his (Sales) request to be relocated, and (2) Defendant's contention she was not made aware of any threats against Plaintiff nor any request to relocate Plaintiff not are there any documents which reflect such matters. The factual disputes should not – and cannot – be resolved by discovery motions. Under the circumstances, Plaintiff's allegations and Defendant's denials should be resolved either by the parties' competing motions for summary judgment (Plaintiff, ECF No. 68; Defendant, ECF No. 100), or if necessary, at trial.

**II. LEGAL ANALYSIS**

Fed. R. Civ. P. 37(e) is not implicated with respect to this litigation because Rule 37(e) pertains to electronic evidence which was not preserved. There is no credible evidence that any "move kites" were ever stored electronically, let alone that such materials were subsequently deleted from electronic retention. Therefore, the court will consider Plaintiff's motions in the context of common law spoliation in the application of the court's discretion. *Fjelstad v. Am. Honda Motor Co., Inc.*, 762 F.2d 1334, 1337 (9th Cir. 1985).[3]

---

[3] Conceivably Plaintiff's motion could be denied on the grounds there is no electronic evidence which was deleted. However, because Plaintiff's other motions (ECF Nos. 70 and 83) argue spoliation of print

5

"Spoliation is 'the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence[,] in pending or reasonably foreseeable litigation.'" *Reinsdorf v. Skechers U.S.A. Inc.,* 296 F.R.D. 604, 626 (C.D. Cal. July 19, 2013) (quoting *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003)). Thus, a party must preserve evidence it knows or should know is relevant to a claim or defense of any party. *See Reinsdorf,* 296 F.R.D. at 626-27 (citations omitted); *In re Napster, Inc. Copyright Litigation*, 462 F.Supp.2d 1060, 1067 (N.D. Cal. 2006) (citations omitted). This duty arises not only during litigation, but extends to that "period before litigation when a party should reasonably know that evidence may be relevant to anticipated litigation." *Surowiec v. Capital Title Agency, Inc.*, 790 F.Supp.2d 997, 1005 (D. Ariz. 2011) (citation and quotation marks omitted). Once the duty to preserve takes effect, a party must "suspend any existing policies related to deleting or destroying files and preserve all relevant documents related to the litigation." *In re Napster*, 462 F.Supp.2d at 1070 (citations omitted).

There are two sources of authority under which a district court can sanction a party who has engaged in spoliation of evidence: the inherent power of the court to levy sanctions in response to abusive litigation tactics, and Federal Rule of Civil Procedure 37's provision for sanctions against a party who fails to obey an order to provide discovery. *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006) (citation omitted). Here, there is no a particular discovery order being violated; therefore, the court's analysis is based on the inherent power to sanction.

---

materials, the court will address common law spoliation as the doctrine pertains to all of Plaintiff's motions.

Specifically, the court "'has the inherent discretionary power to make appropriate evidentiary rulings in response to the destruction or spoliation of relevant evidence.'" *Medical Laboratory Mgmt. Consultants v. American Broadcasting Companies, Inc.*, 306 F.3d 806, 824 (9th Cir. 2002) (quoting *Glover v. BIC Corp.,* 6 F.3d 1318, 1329 (9th Cir. 1993)).

> Courts may sanction parties responsible for spoliation of evidence in three ways. First, a court can instruct the jury that it may draw an inference adverse to the party or witness responsible for destroying the evidence. Second, a court can exclude witness testimony proffered by the party responsible for destroying the evidence and based on the destroyed evidence. Finally, a court may dismiss the claim of the party responsible for destroying the evidence.

*In re Napster*, 462 F.Supp.2d at 1066 (internal citations omitted). "A party's destruction of evidence need not be in 'bad faith' to warrant a court's imposition of sanctions." *Id*. (citations omitted). "District courts may impose sanctions against a party that merely had notice that the destroyed evidence was potentially relevant to litigation." *Id*. (citations omitted). The "motive or degree of fault in destroying evidence is relevant to what sanction, if any, is imposed." *Id*. at 1066-67 (citations omitted).

The applicable standard of proof for spoliation appears to be a preponderance of the evidence. *Krause v. Nevada Mut. Ins. Co.*, No. 2:12-cv-00342-JCM-CWH, 2014 WL 496936, at * 7 (D. Nev. Feb. 6, 2014). The party seeking spoliation sanctions has the burden of establishing the elements. *Reinsdorf,* 296 F.R.D. at 626.

### III. CONCLUSION

Defendant does not argue she did not have a duty to preserve relevant evidence but rather there was no evidence to preserve. Plaintiff argues there was. Plaintiff Sales has not carried his burden establishing he submitted "move kites" to Defendant Baros, or that if they were, the kites were not retained despite knowledge of the likelihood of litigation. At this juncture, the court finds

7

no basis to impose any sanctions for alleged spoliation of evidence. Plaintiff's motions (ECF Nos. 70, 82 and 119) are **DENIED**.

**IT IS SO ORDERED**.

Dated: October 22, 2019.

                                                _William G. Cobb_
                                                WILLIAM G. COBB
                                                UNITED STATES MAGISTRATE JUDGE