**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| NEAL SALES,<br><br>  Plaintiff,<br><br>v.<br><br>KIM ADAMSON, et al.,<br><br>  Defendants. | Case No.: 3:17-cv-00186-RCJ -WGC<br><br>**Report & Recommendation of<br>United States Magistrate Judge**<br><br>Re: ECF Nos. 68, 100 |

This Report and Recommendation is made to the Honorable Robert C. Jones, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is Plaintiff's Motion for Summary Judgment. (ECF No. 68.) Defendant Susan Baros (Baros) filed a response. (ECF Nos. 80, 80-1 to 80-6.) Plaintiff filed an addendum to his motion. (ECF No. 81.) He then filed a reply in support of his motion. (ECF No. 83.)

Also before the court is Baros' Motion for Summary Judgment. (ECF Nos. 100, 100-1 to 100-7, errata at ECF No. 102.) Plaintiff filed a response. (ECF No. 104.) Plaintiff also moved to strike the motion for summary judgment (ECF No. 105), which the court denied (ECF No. 106). Plaintiff filed an addendum to his response to the motion for summary judgment. (ECF No. 108.) Baros moved to strike the addendum (ECF No. 115), but the court also denied the motion. (ECF No. 120.) Baros filed a reply. (ECF No. 109.)

After a thorough review, it is recommended that both Plaintiff's motion (ECF No. 68) and Baros' motion (ECF No. 100) be denied, as a genuine dispute of material fact remains as to whether

Baros had notice of the risk of harm posed to Plaintiff by another inmate such that she could be liable under the Eighth Amendment for failing to protect Plaintiff.

## **I. BACKGROUND**

Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this action pursuant to 42 U.S.C. § 1983. (Compl., ECF No. 6.) The events giving rise to this action took place while Plaintiff was housed at Lovelock Correctional Center (LCC). (*Id.*) The only defendant is LCC Caseworker Susan Baros.

On screening, Plaintiff was allowed to proceed with a single Eighth Amendment claim for failure to protect against Baros. (ECF No. 5.) Plaintiff's other claims were dismissed with leave to amend; however, Plaintiff did not file an amended complaint. (*See* ECF Nos. 5, 8.)

Plaintiff alleges that beginning in December of 2015, he notified Baros on a weekly basis that another male inmate, known as "Pee Wee," was sexually stalking him by staring in his window, following him, showering at the same time as Plaintiff, and rubbing his crotch against Plaintiff's back while he sat at tier tables. Plaintiff claims that Baros refused to move Plaintiff or Pee Wee to separate units and called Plaintiff a troublemaker and crybaby. In the meantime, Plaintiff's pain medication was increased, causing him to sleep heavily during the days, when cell doors were left open. Plaintiff avers that on May 9, 2016, his cellmate left without locking the cell door, while the heavily medicated Plaintiff slept. Plaintiff was awakened at approximately 12:15 p.m. by Pee Wee, who already was sodomizing him. Plaintiff attempted to escape, but the much larger Pee Wee threw Plaintiff into the steel bunk and concrete wall, causing thoracic spine and mandible fractures, and knocking Plaintiff unconscious. (ECF No. 6 at 11-12.)

Baros previously filed a motion for summary judgment on September 6, 2018. (ECF No. 26.) Baros argued then, as she does in the present motion, that there was no evidence that Plaintiff

notified her that Pee Wee posed a serious threat to his safety. She also renews her argument that she is entitled to qualified immunity. Plaintiff, as he does now, contested Baros' version of events. Plaintiff maintained that he repeatedly informed Baros by going into her office to ask Baros to move him away from Pee Wee because he was sexually stalking Plaintiff. In the report and recommendation to District Judge Jones that the motion for summary judgment be denied, the court noted that there was "an obvious dispute of material fact that necessitates denying Baros' motion[.]" (ECF No. 34 at 7:9-11.) Plaintiff had also claimed the motion was premature as he should be allowed to conduct discovery, and asserted that video footage would show him going to Baros' office prior to the assault. He asked the court to order Baros to turn over video footage from February 10, 2016 to May 25, 2016, showing Baros' office and Plaintiff's cell. The court denied that request as moot in light of the finding that there was a disputed material fact, noting that Plaintiff could request such footage in discovery. (ECF No. 34 at 7-8.)

The undersigned further concluded that Baros' qualified immunity argument hinged on a finding that Baros did not know of the sexual stalking, but since that fact was disputed, the court could not find Baros was entitled to qualified immunity. (ECF No. 34 at 7.) Therefore, it was recommended that Baros' motion for summary judgment be denied. District Judge Jones adopted and accepted the report and recommendation. (ECF No. 37.)

In his opposition to Baros' current motion, Plaintiff argues that the court should not consider Baros' motion because it is a renewed motion for summary judgment filed without leave of court. Baros' current counsel, who appeared in the case about a month after the report and recommendation was adopted, states that he did not realize a prior motion had been filed. If he had, he states that he would have styled this as a renewed motion. In addition, he asserts there is new evidence before the court. While the issues raised are ultimately similar to those raised in the

original motion, the court finds Plaintiff's argument unavailing. After the report and recommendation was issued on the first motion, the court issued a scheduling order that contemplated the filing of dispositive motions and allowed the parties to commence discovery. The parties have since completed discovery, and there is additional evidence and argument before the court. Therefore, the court will consider this second motion. *See Hoffman v. Tonnemacher,* 593 F.3d 908, 911 (9th Cir. 2010) ("district courts have discretion to entertain successive motions for summary judgment").

The court must address one other issue before turning to the analysis of the pending motions: Plaintiff has filed various motions, including several motions for sanctions, motions for spoliation of evidence, and motions to compel, which all relate to whether Plaintiff's alleged inmate requests (kites) to be relocated to another housing unit were received and retained by Baros, which would be evidence that he put Baros on notice of the risk posed by Pee Wee. (*See e.g.* ECF Nos. 46, 54, 62, 70, 73, 77, 82, 87, 119 and related briefing.) The court held a hearing on some of these motions on August 1, 2019, and received extensive briefing on the issue. In short: (1) Baros argued there was no evidence to preserve/produce; and (2) Plaintiff argued he submitted the kites to Baro. The court found, however, that there was a factual dispute and no conclusive evidence that Baros did receive them or that they were not retained despite knowledge of likely litigation. As a result, the court issued an order on ECF Nos. 70, 82 and 119 on October 22, 2019, denying the motions because of the disputed versions of the alleged notice, there was, therefore, no basis to impose sanctions.

The issue raised by those motions is essentially the same factual dispute that resulted in the denial of Baros' prior motion for summary judgment, and is the same factual disputed raised in the pending competing motions for summary judgment: did Baros have notice of a risk posed to

Plaintiff by Pee Wee? As the court will discuss in detail below, after discovery and extensive briefing, the facts remain in dispute, and for that reason the pending motions for summary judgment should be denied.

## II. LEGAL STANDARD

The legal standard governing this motion is well settled: a party is entitled to summary judgment when "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Cartrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)). An issue is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if it could affect the outcome of the case. *Id*. at 248 (disputes over facts that might affect the outcome will preclude summary judgment, but factual disputes which are irrelevant or unnecessary are not considered). On the other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *Anderson*, 477 U.S. at 250.

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted); *see also Celotex,* 477 U.S. at 323-24 (purpose of summary judgment is "to isolate and dispose of factually unsupported claims"); *Anderson,* 477 U.S. at 252 (purpose of summary judgment is to determine whether a case "is so one-sided that one party must prevail as a matter of law"). In considering a motion for summary judgment, all reasonable inferences are drawn in the light most favorable to the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted); *Kaiser Cement Corp. v. Fischbach & Moore Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). That being said, "if the evidence of the nonmoving party "is not

significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-250 (citations omitted). The court's function is not to weigh the evidence and determine the truth or to make credibility determinations. *Celotex,* 477 U.S. at 249, 255; *Anderson*, 477 U.S. at 249.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'… In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party cannot establish an element essential to that party's case on which that party will have the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a genuine dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Matsushita*, 475 U.S. at 587. Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth

specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

### III. DISCUSSION

**A. Eighth Amendment Failure to Protect**

Under the Eighth amendment, prison conditions should not "involve the wanton and unnecessary infliction of pain" or be "grossly disproportionate to the severity of the crime warranting imprisonment." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Although prison conditions may be, and often are, restrictive and harsh, prison officials "must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 486 U.S. 517, 526-27 (1984)).

"[P]rison officials have a duty…to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833 (citations and quotation marks omitted). "Having incarcerated 'persons [with] demonstrated proclivity[ies] for antisocial criminal, and often violent, conduct,' having stripped them of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course." *Farmer*, 511 U.S. at 833 (internal citations omitted). "Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'" *Id.* at 834 (citing *Rhodes*, 452 U.S. at 347).

To demonstrate a violation of this duty, the prisoner must establish that prison officials were "deliberately indifferent" to a serious threat to the inmate's safety. *Farmer*, 511 U.S. at 834; *see also Labatad v. Corr. Corp. of Am.*, 714 F.3d 1155, 1160 (9th Cir. 2013) (citing *Gibson v. Cty. of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002)). Objectively, the inmate must be "incarcerated

under conditions posing a substantial risk of serious harm." *Id*. Subjectively, the inmate must prove that the prison official knew of and disregarded the risk to his safety. *Farmer*, 511 U.S. at 837; *Labatad*, 714 F.3d at 1160 (citation omitted).

**B. Analysis**

According to Plaintiff, beginning in October of 2015, he began notifying Baros on a weekly basis that Pee Wee was sexually stalking him by staring in his window, following Plaintiff, showing at the same time Plaintiff was showering, and rubbing his crotch against Plaintiff's back while Plaintiff was seated at the tier tables. Plaintiff verbally notified Baros in her office, and also sent numerous inmate request forms to have him moved to another unit. Baros refused to do so. On one occasion, Plaintiff asserts that Pee Wee masturbated on his bed, and he went straight to Baros' office and told her and asked her to come see what Pee Wee had done. Baros said she did not want to. Plaintiff told Baros to move him out of the unit, and Baros said that she would handle it. Plaintiff was moved, but to another cell in the same unit. He claims that after sending many requests to be moved, Baros called him to her office and told him not to send anymore kites and she would move him to another unit—he just had to be patient. In response, he told Baros that the sexual stalking by Pee Wee had gotten worse. He continued to send requests to be moved, and Baros called Plaintiff a "crybaby" and "troublemaker" and said she would move him, but did not. He told Baros that Pee Wee would come to Plaintiff's cell and expose himself, and Baros told him he would be moved soon, and asked him to leave. He was moved, but once again it was to another cell in the same unit, this time under the stairs. He sent more inmate request forms. At one point, Baros told Plaintiff to find someone in another unit to trade beds with, and Plaintiff submitted a move kite with the signatures of four other inmates to trade with. He was not moved. Then, on

1  May 9, 2016, Plaintiff was sexually assaulted by Pee Wee. (ECF No. 68 at 13-20; ECF No. 68 at
2  21-22; ECF No. 104 at 33-40.)
3        Plaintiff submits an affidavit from inmate David M. Foust, who states that he was aware of
4  Plaintiff's problems with Pee Wee, and on three occasions he witnessed Plaintiff filling out kites
5  asking Baros for a bed move due to being sexually stalked by Pee Wee. (ECF No. 68 at 23; ECF
6  No. 104 at 32.) Plaintiff also submits a second inmate affidavit, from inmate Brendan Dunkley,
7  stating that on numerous occasions Plaintiff brought him kites to request help with Pee Wee to be
8  removed from the unit due to Pee Wee's behavior. Mr. Dunkley states that he is certain that
9  Caseworker Baros received the kites. (ECF No. 81 at 3; ECF No. 104 at 31.)
10        Baros disputes Plaintiff's version of events. Baros contends Plaintiff never notified her in
11  writing, or otherwise, of his alleged concerns with Pee Wee, and points to the fact that there are
12  no case notes, grievances or kites reflecting that he did so. (ECF Nos. 80-2; 80-4, 80-5; 100-2;
13  100-3, 100-4; 100-5; Baros. Decl., ECF No. 100-6.)
14        Like the prior motion for summary judgment, there is an obvious dispute of material fact
15  as to whether Baros had notice that Plaintiff's safety was at risk due to Pee Wee's conduct.
16        Plaintiff maintains in his declarations that he notified Baros various times that Pee Wee
17  was sexually stalking him, and sent numerous kites advising her of this and asking for a bed move.
18  Baros, on the other hand, contends this did not occur, and that there is no evidence to support these
19  claims. The evidence, however, is Plaintiff's declaration and the declarations of inmate Faust and
20  inmate Dunkley, that support Plaintiff's version of events.
21        Despite Baros' argument that the court should disregard these conclusory and self-serving
22  declarations, the Ninth Circuit has held that these declarations are competent evidence: "We have
23  previously acknowledged that declarations are often self-serving, and this is properly so because

the party submitting it would use the declaration to support his or her position." *Nigro v. Sears, Roebuck and Co.*, 784 F.3d 495, 497 (9th Cir. 2015) (citing *S.E.C. v. Phan*, 500 F.3d 895, 909 (9th Cir. 2007) (holding that district court erred in disregarding declarations as "uncorroborated and self-serving")). "Although the source of the evidence may have some bearing on its credibility, and thus on the weight it may be given by a trier of fact, the district court may not disregard a piece of evidence at the summary judgment stage solely based on its self-serving nature." *Id*. While the court may disregard a self-serving declaration "that states only conclusions and not facts that would be admissible evidence[,]" Plaintiff's declaration does contain detailed factual statements. *Id.* In *Nigro*, the Ninth Circuit concluded that the declaration of Nigro, even though uncorroborated and self-serving, was sufficient to establish a genuine dispute of material fact. The weight to be assigned to self-serving evidence "is to be assessed by the trier of fact at trial, not to be a basis to disregard the evidence at the summary stage." *Id.* at 499.

Baros also points to Plaintiff's kite from the date of the incident to support her position that Plaintiff did not notify her of the risk posed by Pee Wee. The kite states:

> Someone help me. I need to be moved out of this unit—I have been molested since I've been in this unit by the big black dude in Cell # 1. Today, I was awaken by him as he put his finger in my butthole. I can't take it any more from this unit, and from him. If this is telling so be it. The Caseworker can't seem to move me out —I didn't want to tell her, I have to tell someone.

(ECF No. 80-1 at 2; ECF No. 100-1 at 2.) In the following pages, Plaintiff states: "Been asking to move out of Unit 2A because of it, but I didn't want to tell the caseworker the 'why' I wanted to be moved to another unit." (ECF No. 80-1 at 4; ECF No. 100-1 at 4.)

This latter statement *may* contradict Plaintiff's indicating that Plaintiff did advise Baros' why he wanted a bed move numerous times, but it is not entirely clear what was meant in the statement in the kite made after the incident. Moreover, Plaintiff provides other evidence,

including his declarations and those of Foust and Dunkley, that he did notify Baros of the reason why he wanted a bed move. It is not the court's province in ruling on a motion for summary judgment to make credibility determinations. That is reserved exclusively for the fact finder.

In his briefing related to the motions for summary judgment, Plaintiff references his requests for the move kites several times. Plaintiff speculates that these kites were destroyed and once again asks for sanctions for spoliation of evidence. As the court stated in its October 22, 2019 order, there is insufficient evidence to support sanctions for spoliation. Instead, Plaintiff and Baros may present evidence at trial addressing the factual issue of whether Plaintiff sent Baros kites and if so, what happened to the kites.

In sum, Plaintiff's motion for summary judgment (ECF No. 68) and Baros' second motion for summary judgment (ECF No. 100) should be denied on the basis that there is a genuine dispute of material fact as to the central issue in this case: whether Baros was on notice that Plaintiff was facing a risk of harm from Pee Wee before the assault.

**C. Qualified Immunity**

Similar to Baros' first motion for summary judgment arguing she is entitled to qualified immunity, the court finds that Baros' qualified immunity argument in the second motion for summary judgment is unavailing. Baros' argument continues to hinge on a finding by the court that Baros did not know of the sexual stalking. Taking the facts in the light most favorable to Plaintiff, Baros was put on notice of the sexual stalking, and the law was perfectly clear that if she knew of Pee Wee's behavior and failed to act to protect Plaintiff, such conduct would violate the Eighth Amendment and a qualified immunity defense would be unavailable to Baros.

///

///

## IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an order **DENYING** Plaintiff's (ECF No. 68) and Baros' (ECF No. 100) motions for summary judgment.

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: October 28, 2019.

_____
William G. Cobb
United States Magistrate Judge